IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAUREEN DEVINE,<br><br>    Plaintiff,<br><br>    v.<br><br>JO ANNE BARNHART, Commissioner, Social Security Administration,<br><br>    Defendant.<br>_____/ | No. C-06-2365 MJJ<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

**INTRODUCTION**

Before the Court are cross-motions for summary judgment by Maureen Devine ("Plaintiff") and Jo Anne B. Barnhart, Commissioner of Social Security ("Defendant").[1] Plaintiff brings this action pursuant to Section §205(g) of the Social Security Act ("SSA") as amended, and 42 U.S.C. §405(g) to obtain judicial review of the final decision by the Commissioner that Plaintiff did not qualify for disability benefit payments under Title II of the SSA prior to her date last insured of December 31, 2006 and post her onset date of May 13, 2002. For the reasons set forth below, the Court **DENIES** Plaintiff's motion for summary judgment, and **GRANTS** Defendant's motion for summary judgment.

**FACTUAL BACKGROUND**

Plaintiff is 62 years old (age 57 at the time of onset). She has a highschool education and worked as a customer service representative in the airline industry for 33 years. Transcript of Undisputed Facts supplied by the Commissioner ("Tr."). (Tr: 160). On or about May 7, 2002,

---

[1] Docket Numbers 7, 8, and 9.

Plaintiff fell down the steps in her apartment and injured her elbow. (Tr: 120). On June 3, 2002 she underwent surgery in which David H. Goltz, M.D. performed an excision of her right elbow radio head. (Tr: 115).

On April 15, 2003 Plaintiff filed an application for disability insurance benefits under Title II of the Social Security Act ("SSA"). Plaintiff alleged disability from May 13, 2002 due to a damaged right elbow, neck problems, degenerative disc disease, rheumatoid arthritis, and a bulging disc.[2] (Tr:15). Following initial and reconsideration denials by the SSA, Plaintiff filed a timely request for hearing in front of Administrative Law Judge ("ALJ") James M. Kaplan on April 4, 2005. (Tr: 15). Plaintiff questions the November 9, 2005 ALJ decision that claimant was not entitled to a period of disability or disability benefits under Sections 216(i) and 223. (Tr: 23).

The ALJ applied the five-step sequential evaluation procedure set forth in 20 C.F.R. § 404.1520 to determine whether Plaintiff was disabled within the meaning of the SSA. At the first step, the ALJ found that Plaintiff was not engaging in substantial gainful activity. (Tr: 22). At the second step, the ALJ found that Plaintiff had numerous severe impairments: (1) severe musculoskeltal impairments in her right elbow (related to a May 2002 fracture), in her back and feet (intermittent plantar fasciitis), and in her neck (degenerative disc disease); (2) obesity (Plaintiff weighed 241 pounds at the hearing); (3) rheumatoid arthritis; and (4) that she suffered from a TIA which he considered severe in combination with her other impairments . (Tr:16, 336). At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listing"). (Tr: 22). The ALJ determined that Plaintiff had the residual functional capacity for sedentary work that requires no more than occasional, repetitive use of the right upper extremity. Id. At step four, he found that Plaintiff did not retain the residual functional capacity to perform her past work as a customer service representative in the airline industry. Id. At step five, he found that based on Plaintiff's residual functional capacity, age, education, and work experience, she possessed the ability to find work as an Information Clerk, Directory of Occupational Titles ("DOT") 237-367-

---

[2] The record shows that Plaintiff attempted to amend the onset date to December 31, 2001 during the hearing but this was not allowed because the Social Security Administration had not been given the opportunity to evaluate any evidence pertinent to that period.

2

1  022, of which there are 980,000 jobs in the national economy and 33,500 jobs in California. (Tr:
2  21). The ALJ found that she was not disabled at any time relevant to the decision. (Tr: 22). The
3  ALJ's denial of disability benefits became the final decision of the Commissioner when the Appeals
4  Council declined to review the decision on March 23, 2006. (Tr: 6-8).

5        The ALJ relied in part on a July 23, 2003 report by orthopedic consulting examiner Calvin
6  Pon, M.D. (Tr: 17, 20, 166-70). Dr. Pon examined Plaintiff and reported that she had chronic pain
7  in her right wrist, possibly from tendinitis and chronic pain in her right hand, possibly from
8  degenerative arthritis. (Tr: 169). Dr. Pon further found that she had chronic pain in her neck and
9  lower back. He found that she should be capable of sitting for six hours of an eight hour workday or
10 standing and walking for six hours in an eight hour workday. He recommended limitations on
11 stooping, crouching, kneeling, and only lifting items between 10 and 20 pounds on occasion. He
12 also noted that there might be some symptomatic limitations to use of her right arm and right hand.
13 No other limitations are noted. (Tr: 169-70).

14       The ALJ considered Dr. Pon's report in conjunction with January 15, 2004 treatment notes
15 by Russell Davis, M.D. (Tr: 224-30); letters to Plaintiff's primary care physician from Timothy M.
16 Sowerby, M.D. from 2004. (Tr: 254-58); and a physician's supplementary certificate from
17 Plaintiff's primary care physician, Curtis Robinson, M.D. in which he noted that Plaintiff was
18 "unable to type or do repetitive hand motions". (Tr: 318-19). From these combined sources the ALJ
19 found that Plaintiff's plantar fasciitis, as treated with orthotics and celebrex and in conjunction with
20 Plaintiff's obesity, orthopedic, and arthritic conditions limited her to a residual functional capacity of
21 a reduced range of sedentary work. (Tr: 20). At the same time the ALJ refused to credit Plaintiff's
22 testimony about the intensity of the pain that was related to her plantar fasciitis. (Tr: 20, 334).

23       Additionally, the ALJ relied upon testimony by vocational expert Stephen Davis ("VE") at
24 Plaintiff's initial hearing. (Tr: 20-21, 352-61). The ALJ asked the VE to consider a hypothetical
25 situation in which Plaintiff had no more than "occasional repetitive" use of her upper right
26 extremity, and to determine what jobs would potentially be available to Plaintiff. (Tr: 353-55). The
27 ALJ later elaborated in his findings that occasional meant up to one third of the work day and
28 repetitive meant over and over again. (Tr: 20). Under such a scenario the VE determined that

Plaintiff would be able to perform the job of information clerk. (Tr: 355). The Plaintiff then asked the VE to opine on a scenario where the job required more repetitive use of her upper extremity. In that situation the VE replied that Plaintiff would be precluded from the job in such a situation. (Tr: 360-61). However, the ALJ found no record support for Plaintiff's proposed scenario and concluded that Plaintiff was capable of performing as an information clerk. (Tr: 21).

Plaintiff filed a complaint pursuant to 42 U.S.C. § 405(g), seeking judicial review by this Court, after the ALJ determined that Plaintiff was not disabled under the SSA. On July 31, 2006, Plaintiff filed a motion for summary judgment. On August 29, 2006, Defendant filed a cross-motion for summary judgment.

## LEGAL STANDARD

### A.  Summary Judgment

Summary judgment is appropriate if there are no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The Court may disturb the Commissioner's final decision "only if it is based on legal error or if the fact findings are not supported by substantial evidence." *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). "[C]onsidering the entire record, [substantial evidence] is relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Matthews v. Shalala*, 10 F.3d 678, 679 (9th Cir.1993). Determinations of credibility, resolution of conflicts in medical testimony and all other ambiguities are to be resolved by the ALJ. *Magallanes*, 881 F.2d at 750. The decision of the ALJ will be upheld if the evidence is "susceptible to more than one rational interpretation." *Andrews v. Shalala*, 53 F.3d 1035, 1040 (9th Cir. 1995). The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. 42 U.S.C. § 405(g). However, even "where findings are supported by substantial evidence, a decision should be set aside if the proper legal standards were not applied in weighing the evidence in making the decision." *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968); *See also Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The court has the power to enter, upon the pleadings and transcript record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or

4

without remanding the cause for a rehearing.  42 U.S.C. § 405(g)

### B.     Title II and Title XVI Benefits

To qualify for Title II and Title XVI benefits, a claimant must establish a medically determinable physical or mental impairment that is expected to result in death or last for a continuous period of at least twelve months that prevents him from engaging in substantial gainful activity.  42 U.S.C. § 423(d)(1)(A).  In addition, to establish a disability, an individual "must show that he is precluded from engaging not only in his 'previous work,' but also from performing 'any other kind of substantial gainful work that exists in the national economy." *Matthews*, 10 F.3d at 680; 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

## ANALYSIS

Plaintiff challenges whether the ALJ's findings were supported by substantial evidence and the application of proper legal standards.  Plaintiff focuses on the ALJ's findings concerning Plaintiff's testimony regarding her levels of pain and on the ALJ's finding at step five that there are other jobs which Plaintiff could perform.   Plaintiff argues that: (1) the ALJ's determination that Plaintiff's subjective description of her pain was not credible  failed to meet the standards provided in Social Security Ruling ("SSR") 96-7p and was legal error; and (2) the ALJ failed to meet his burden at step five to find other jobs that the Plaintiff could do.

**I. The ALJ Properly Found that Plaintiff was Not Credible in Describing Subjective Symptoms of Pain.**

Plaintiff argues that the ALJ failed to properly consider Plaintiff's own descriptions of her subjective levels of pain.  Plaintiff stated in the hearing that, "the pain level now, sometimes becomes so intense that I've had to crawl from my living room to my bedroom because it hurt too much to stand on it."  (Tr: 334).  The ALJ stated that "[Plaintiff] alleges greater limitations and conditions lasting for longer periods than are established by the objective medical evidence and by the record as a whole. [Plaintiff]'s testimony is contradictory."  (Tr: 19).  The ALJ later states that "there is no record support for claimant's testimony that her plantar fascitis related pain is "now" so intense that "sometimes" she has to crawl from the living room to the bedroom."  (Tr: 20).

If the ALJ finds that the claimant's testimony as to the severity of her pain and impairments

5

is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony. *See Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir.1991) (en banc). The ALJ may consider at least the following factors when weighing the claimant's credibility: "[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimaint's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). Although an adjudicator may find the claimant's allegations of severity to be not credible, the adjudicator must specifically make findings which support this conclusion. *Cotton v. Bowen*, 799 F.2d 1403, (9th Cir.1986).

Plaintiff states that the ALJ did not properly weigh the evidence in reaching the conclusion that Plaintiff's descriptions of her levels of pain were not credible. She points to SSR 96-7p[3] which notes that:

> whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96-7p. Plaintiff argues that his failure to consider the entire case record constitutes reversible legal error. This argument requires however that there be no objective medical evidence substantiating the symptoms of pain. That was not the case here. In reaching his conclusion, the ALJ first pointed to Plaintiff's personal physician Dr. Robinson whose notes only precluded repetitive hand movements. (Tr: 20, 319). The ALJ pointed out that Dr. Robinson's notes did not indicate a basis for any further limitations. (Tr: 20). The ALJ then looked to the medical evidence provided by Dr. Sowerby. The ALJ noted that these records, "accord no basis for crediting [Plaintiff's] testimony that she has additional limitations associated with colitis or that she had substantial limits for any sustained period of time. (Tr: 20). The ALJ also considered the opinion of Dr. Pons and Dr. Davis. The ALJ concluded that the medical evidence showed that Plaintiff's

---

[3] SSR's do not have the force of law but as they are binding to the extent that they represent the Commissioner's interpretation of the agency's regulations. They are therefore given some deference. *Holohan v. Massanari*, 246 F.3d 1195, 1202 fn.1 (9th Cir. 2001).

conditions limited her to a reduced range of sedentary work (Tr: 20).  The ALJ also concluded that this medical evidence does not support Plaintiff's assertion that her pain is so intense that sometimes she has to crawl from the living room to the bedroom.  (Tr: 20).

Even if the medical evidence was not substantial enough to conclude that Plaintiff was not credible in her descriptions of her pain, this was not the only basis for the ALJ's conclusion.  The ALJ also noted contradictions and inconsistencies in Plaintiff's own testimony.  These considerations are proper in determining credibility regarding subjective levels of pain.  *Orteza v. Shalala*, 50 F.3d 748 (9th Cir.1995).  The ALJ noted that Plaintiff initially testified to missing four to five days of work per month due to back flare-ups, but then corrected herself to state that she only missed work every two to three months. (Tr: 18, 338).  The ALJ also described inconsistencies regarding Plaintiff's testimony about her medication.  He noted that Plaintiff at first testified that she was taking 325 milligrams of aspirin per day for her pain, but upon further questioning she revealed that she in fact was taking it as a stroke preventative. (Tr: 19, 350).  The ALJ finally noted that Plaintiff's hearing testimony about her limited daily activity directly contradicted her reporting to Dr. Pon that in July 2003 she was capable of driving, cooking, and grocery shopping.  (Tr: 20, 167, 344-45).

Plaintiff provides twenty examples of evidence that was not considered by the ALJ in making his credibility determination. (Pl.'s Reply at 7-8.)    She asserts that SSR 96-7p requires that the ALJ consider the entire case record and that these omissions constitute legal error.  (Pl.'s Reply at 7.)  This listing ignores the fact that the ALJ relied on evidence provided by four medical experts as well as Plaintiff's own contradictory testimony in determining that her subjective descriptions of pain were not credible.  The district court may not overturn an ALJ's findings which are supported by substantial evidence, even though other evidence exists that supports the claimant's position.  *Sandgathe v. Chater,* 108 F.3d 978, 980 (9th Cir. 1997).

The ALJ provided multiple examples of convincing evidence in reaching the conclusion that Plaintiff was not credible in describing subjective levels of pain.  The medical evidence and inconsistencies in Plaintiff's testimony were proper considerations in making this determination.  *Thomas,* 278 F.3d 958-59.  As a result, this Court will not overrule the ALJ's finding that Plaintiff's

7

1  description of her subjective levels of pain was not credible.

**II. The ALJ's Determination at Step Five that There Were Other Jobs that Plaintiff Could Perform.**

Next, Plaintiff argues that substantial evidence does not support the ALJ's decision that there are other jobs that Plaintiff is able to perform given her residual functional capacity. Defendant responds that the ALJ made a proper determination in concluding that Plaintiff could find employment as an information clerk.

The Commissioner can meet the burden of showing that Plaintiff can engage in other substantial gainful activity by propounding to a VE a hypothetical question that reflects all of Plaintiff's limitations. *Roberts v. Shalala,* 66 F.3d 179, 184 (9th Cir. 1995). The ALJ must propose a hypothetical question that is based on medical assumptions supported by substantial evidence in the record that reflects each of the claimant's limitations. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163 (9th Cir. 2001). The VE must identify a specific job or jobs in national economy having requirements that claimant's physical and mental abilities and vocational qualifications would satisfy. *Osenbrock*, 240 F.3d at 1162-63.

A.   The ALJ's Hypothetical Question to the VE Was Proper

Following Plaintiff's testimony, the ALJ asked the VE to describe a job for Plaintiff, given her skills and experience, and assuming a hypothetical situation in which he found that she had "occasional repetitive" use of her upper right extremity. The ALJ defined "occasional" as being one-third of the work day and defined "repetitive" as over and over again. (Tr: 353). The ALJ responded that in such a hypothetical situation, she would be suited for the job of information clerk. Plaintiff now asserts that this question was not proper because it ignored the preclusion of repetitive hand movements that was issued by Dr. Robinson, and which the ALJ adopted. (Pl's Mot. for Summ. J. at 13) (Tr: 20, 318-19).

An ALJ is not required to include in the hypothetical posed to the vocational expert limitations he found not to exist. *Roberts*, 66 F.3d at 184. A hypothetical question posed to the vocational expert was adequate where the vocational expert clearly understood that the ALJ was

8

asking about a person who could perform only light work and who had additional restrictions. *Honcoop v. Barnhart*, 87 Fed.Appx. 627, 629 (9th Cir. 2004) The ALJ was not required to include conditions that he permissibly found not to constitute limitations. *Id.*

Plaintiff argues that the ALJ's hypothetical question was inconsistent with its acceptance of Dr. Robinson's certificate that precluded repetitive hand movements. A closer look at the record shows that the ALJ tailored the question so as to be consistent with the evidence offered by Dr. Robinson:

> Please assume as a hypothetical question an individual the claimant's age, education, and past work experience. Assume I find her capable of performing the exertional demands of sedentary work with the following limitations. No more than occasional, well let's put it this way to try to use the precise vocational terms and the imprecise term, repetitive, that the doctors always use. No more than occasional repetitive use of, it's really the right upper extremity but in terms of keyboarding you need them both. So it amounts to being the same thing. By repetitive, I mean over and over again. So in other words there could be no more than occasional, is just up to one third, right?

(Tr: 353). The ALJ was careful to limit his hypothetical with the words "occasional repetitive". (Tr: 353).

What this comes down to is whether a job that involves "occasional repetitive use of the upper right extremity" (Tr: 353) precludes a person who is "unable to type or do repetitive hand movements" (Tr: 318). If such a person is precluded, it would mean that the ALJ would have been disregarding his own findings regarding Dr. Robinson when he asked the hypothetical that he did. It would be legal error for the ALJ to not include a limitation he found to exist in his hypothetical. *Roberts*, 66 F.3d at 184.

By including the limitation of "occasional repetitive use" which is later defined as up to one third the ALJ adequately represented the restrictions he found to be true in his hypothetical. The ALJ considered a large body of evidence including the Certificate signed by Dr. Robinson. (Tr: 20). After taking everything into account he made a proper determination that she has the residual functional capacity for sedentary work that requires no more than the occasional, repetitive use of her upper right extremity. (Tr: 22). It was the language from this finding that was directly in the hypothetical posed to the VE. (Tr: 353). Because Dr. Robinson's evidence was included in determining that Plaintiff was limited only to "occasional repetitive use of the upper right

9

extremity," this evidence was necessarily included in the hypothetical question posed to the VE.

Plaintiff also tries to assert that the ALJ did not meet the requirements under *Osenbrock* because the ALJ did not satisfy his burden to provide clear and convincing reasons why Plaintiff was not credible. (Pl.'s Reply at 13.)  As noted above the ALJ made a proper finding, and therefore complied with the requirements of *Osenbrock* to pose only questions that reflect each of Plaintiff's limitations.  An ALJ is free to accept or reject restrictions in hypothetical question that were not supported by substantial evidence.  *Osenbroc*k, 240 F.3d at 1164.  The limitations that the ALJ did find were adequately represented by the limitations noted in the hypothetical.

### B.     The ALJ Did Find Another Job that Plaintiff Could Do

Plaintiff asserts that even if the hypothetical was proper, that the ALJ did not find a job that Plaintiff could actually perform and as a result, failed to meet his burden under step 5.  Based on the ALJ's hypothetical the VE testified that the Plaintiff would be able to work as an information clerk.  (Tr: 355).  The ALJ adopted this testimony in his findings.  (Tr: 21).

Plaintiff argues that the VE's testimony revealed that Plaintiff in fact was not able to perform the job of information clerk, even under the ALJ's hypothetical.  (Pl's Mot. for Summ. J. at 15.) Plaintiff cites to the portion of the record in which the VE was asked how much cumulative time would reaching, handling, and using her fingers occur, to which the VE responded "probably five hours minimum." (Tr: 356).   Plaintiff argues that this answer "essentially eliminated any reference to occasional hand use from the hypothetical." (Pl's Mot. for Summ. J. at 15.)  The ALJ specifically noted that occasional use meant one third of the time.  (Tr: 20).

Plaintiff's correctly notes that five hours is clearly more than one third of an eight hour work day.  However, this discrepancy is explained later in the record after Plaintiff's attorney noted that the gross total of fingering, reaching, and handling exceeds being occasional. (Tr: 358).  The VE elaborated that the term "repetitive" is important and does make a difference. (Tr: 359).  He went on to explain:

> In the job she had before she was constantly at the keyboard and the keys were never rested. Here you could be holding a phone and talking to somebody for five or ten minutes, then putting the phone down and maybe going back and then doing a minute or two of inputting. And then maybe a little writing. And so it's not, you're not inputting on a constant, constant basis. You're more getting out information, it's more oral.

10

(Tr: 359). Here, the VE elaborates that any specific use of hands is of a more intermittent nature and does not qualify under the definition of "repetitive" described by the ALJ. The gross of five hours of total arm use was not contrary to the hypothetical posed by the ALJ. While the job may require a total that exceeds occasional, the question posed was whether it exceeded "occasional repetitive" use. The VE properly answered this question in noting that the job of information clerk may require arm usage more than occasionally, but not repetitively. While he may have been a little more explicit, Plaintiff cites to no authority that requires such a degree of clarity in a VE's testimony before it can be adopted by an ALJ.

Plaintiff also argues that the ALJ's failure to specify to the VE that Plaintiff only wrote with her right hand was reversible error. (Pl's Mot. for Summ. J. at 14.) She argues that this is reversible error because the job of information clerk involves writing. (Pl's Mot. for Summ. J. at 14.) The DOT definition for information clerk is as follows:

> Answers inquiries from persons entering establishment: Provides information regarding activities conducted at establishment, and location of departments, offices, and employees within organization. Informs customer of location of store merchandise in retail establishment. Provides information concerning services, such as laundry and valet services, in hotel. Receives and answers requests for information from company officials and employees. May call employees or officials to information desk to answer inquiries. May keep record of questions asked.

DOT 237.367-022. No place in this definition is writing mentioned. The hypothetical question to the VE did not involve a person precluded from writing, and the VE's testimony only reveals that the job may involve "a little writing." (Tr: 354, 359). As such, the lack of specificity as to Plaintiff's dominant writing hand was not reversible error because writing is not an essential element of the proposed job.

Plaintiff additionally relies on Snyder v Barnhart , No. Civ.A 03-321 GMS, 2005 WL 525258 (D. Del. 2005). Plaintiff's reliance on Snyder is unavailing. Even if this Court were to ignore the fact that this is a non-binding, unreported case from a different state, it is still distinguishable. In *Snyder*, the court noted that the ALJ specifically mentioned claimant's inability to lift anything over 11 pounds as a reason that claimant could not continue with her past work. *Snyder,* 2005 WL 525258, at *8. Here the ALJ made a finding that Plaintiff was limited to only

11

occasionally carrying items weighing 20 pounds. (Tr: 20). The ALJ did not specifically state that this was a reason that she was unable to perform her prior work. Simply put, Plaintiff's restrictions on her ability to lift were clearly not as significant to her inability to perform her prior job as they were to Ms. Snyder. As such, the failure to specifically mention this to the VE was not reversible error in this context. Additionally, the *Snyder* court in reversing, made findings that Plaintiff's subjective testimony of pain was improperly dismissed. *Snyder*, 2005 WL 525258, at *7. As discussed above, that was not the case here.

The ALJ properly found that Plaintiff was capable of performing the job of information clerk. His consideration of the testimony of the VE was proper in this context. *Roberts,* 66 F.3d at 184. Limiting the hypothetical to only those conditions he found to exist was also proper. *Id.* The job proposed by the VE was consistent with the ALJ's hypothetical, and as a result the Court will not overrule the ALJ's finding that Plaintiff is capable of finding work as an information clerk.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's motion, and **GRANTS** Defendant's motion.

**IT IS SO ORDERED.**

Dated: April 27, 2007

MARTIN J. JENKINS

UNITED STATES DISTRICT JUDGE